**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION**

TOWN OF INDIAN RIVER SHORES,
a Florida municipality,

    Plaintiff,

v.

CITY OF VERO BEACH, a Florida
Municipality; ROBERT BRACKETT, Mayor of
the City, in his official capacity; REY NEVILLE,
Vice Mayor of the City, in his official capacity;
HONEY MINUSE, Councilmember of the City
in her official capacity; BOB McCABE,
Councilmember of the City in his official
capacity; DICK WINGER, Councilmember of
the City in his official capacity; MONTE
FALLS, City Manager, in his official capacity.

    Defendants.

CASE NO.: _____

## **COMPLAINT**

    Plaintiff, TOWN OF INDIAN RIVER SHORES ("Plaintiff" or "Town"), by and through its undersigned counsel, sues Defendants, CITY OF VERO BEACH ("Defendant" or "City"); ROBERT BRACKETT, Mayor of the City, in his official capacity; REY NEVILLE, Vice Mayor of the City, in his official capacity; HONEY MINUSE, Councilmember of the City in her official capacity; BOB McCABE, Councilmember of the City in his official capacity; DICK WINGER, Councilmember of the City in his official capacity; and MONTE FALLS, City Manager, in his official capacity (collectively with the City, the "City Defendants").

## INTRODUCTION

The City asserts rights under an anticompetitive and unlawful market allocation agreement in order to foreclose the Town's ability and efforts to obtain higher quality water, wastewater and reuse water services at competitive prices, which services are essential for the Town and its residents. Pursuant to the antitrust laws of the United States, the Town seeks declaratory and injunctive relief against the City's anticompetitive conduct.

## JURISDICTION AND VENUE

1. This is an action for declaratory and injunctive relief based on the antitrust laws of the United States, over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 26; and 28 U.S.C. § 2201.

2. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because the ongoing anticompetitive activity against the Town is occurring in this District. Both the Town and the City are located in this District

## PARTIES

3. The Town is an incorporated Florida municipality of approximately 4,000 residents in Indian River County, Florida. The Town was created by Special Act of the Florida Legislature—Chapter 29163, Laws of Florida (1953)—and is charged with providing, or contracting with others to provide, the Town and its residents with essential water, wastewater and reuse water services (the "Essential Water Services").

4. The City is an incorporated Florida municipality of approximately 17,000 residents in Indian River County, Florida, and owns a municipal water, wastewater and reuse water facility that currently furnishes Essential Water Services to the Town and the Town's residents pursuant to a franchise agreement it has entered into with the Town.

5. Robert Brackett is the Mayor of the City and is being sued in his official capacity only.

6. Rey Neville is the Vice Mayor of the City and is being sued in his official capacity only.

7. Honey Minuse, Bob McCabe, and Dick Winger are Councilmembers of the City and are being sued in their official capacities only.

8. Monte Falls is the City Manager of the City and is being sued in his official capacity only.

## STATEMENT REGARDING THE FLORIDA GOVERNMENTAL CONFLICT RESOLUTION ACT

9. The Town and the City are both political subdivisions subject to Chapter 164, Florida Statutes (the "Florida Governmental Conflict Resolution Act"). Accordingly, the Town will comply with any appropriate dispute resolution procedures under that statute before further prosecution of this action including any required abatement. In the event that the Town and the City fail to resolve their dispute within the time frame, and through the procedures, provided by Sections 164.1053 and 164.1055, Florida Statutes, the Town reserves the right to immediately renew prosecution of this action and to avail itself of all available legal and equitable rights and remedies.

## GENERAL ALLEGATIONS

10. The Town is a customer of the City for Essential Water Services.

11. In addition to expansive Home Rule Powers, the Florida Legislature has given the Town broad powers, among others, to:

  a. "acquire, purchase, lease, install or distribute within the said Town limits when deemed necessary, or outside of said limits when deemed necessary, water supply of any kind whatsoever for public use";

  b. "contract with other municipalities, persons, firms or corporations on behalf of the inhabitants of the Town" for the provision of water or other public utility services;

  c. "purchase, construct, maintain, operate, lease or contract for any public utilities, including but not limited to, … water supply, and distribution systems therefore";

  d. grant public utility franchises of all kinds;

  e. "regulate and control the use and occupancy of the waters, waterways, water bottoms, wharves, causeways, bridges, beaches, streets, thoroughfares, alleys, parks, public lots, and other public places in the Town"; and,

  f. "regulate the use of all streets, boulevards, avenues, highways and public ways within the Town limits."

Ch. 29163, § 2(e), (f), (m) and (t), Laws of Fla. (1953). That law stands and has not been repealed.

  12. The Town has agreed with the City, through a Franchise Agreement[1] attached as Exhibit A, for the City to occupy the Town's right of way and provide Essential Water Services to the Town and its inhabitants for a limited period of time. The Town's powers to extend such rights to the City for only a limited duration are expressly authorized under Florida law.

---

[1] The full agreement is titled Water, Wastewater, and Reuse Water Franchise Agreement Between the Town of Indian River Shores, Florida and the City of Vero Beach, Florida, and was entered into on October 1, 2012.

13. The existing Franchise Agreement between the Town and the City expressly provides that the Town may provide the City with notice of termination if done so within four years prior to the fifteenth anniversary date:

> Indian River Shores, should it desire to renegotiate or terminate, shall give Four (4) years notice before the fifteenth (15th) anniversary date, otherwise the Franchise shall continue uninterrupted under the terms and conditions of this Agreement.

Franchise Agreement, § 4. The 15th anniversary date of the Franchise will occur on October 1, 2027.

14. The Town believes that Indian River County (the "County") could provide Essential Water Services to the Town and its residents at a higher quality and at a lower cost than the City.

15. There is no lawful basis to foreclose the Town from obtaining the Essential Water Services from the County after the Franchise Agreement with the City expires or is terminated.

16. The Town has invested financial resources and time, including work by third-party consultants, to evaluate and prepare for a possible transition to receiving the Essential Water Services from the County. In doing so, the Town has relied on the City's covenant under the Franchise Agreement to provide the Town and its residents Essential Water Services only for a limited time period.

17. In furtherance of these efforts, the Town and the County have communicated regarding the County's willingness to provide Essential Water Services to the Town and its residents following the end of the Town's Franchise Agreement with the City.

18. On or about March 24, 2021, however, the City's Manager wrote to the County Administrator asserting that the Town's ability to obtain the Essential Services from the County was foreclosed by an agreement among the City and County dated August 18,1989 (the "Market

Allocation Agreement"). The City's letter and the Market Allocation Agreement are attached as Composite Exhibit B.[2]

19. In its letter, the City stated that the Town lies in the City Service Area, and that pursuant to the Agreement, "the County shall not provide water or sewer service within the City Service Area without the written approval of the City." *Id.*

20. Thus, the City has disputed the County's right to provide the Essential Water Services to the Town, and has disputed the Town's right to receive Essential Water Services from the County.

21. Subsequently, the City has made numerous public statements asserting that the Market Allocation Agreement creates a permanent territorial allocation, and therefore forecloses the City's existing customers including the Town from ever obtaining competing Essential Water Services from the County without the City's consent.

22. The City's assertions demonstrate that the Market Allocation Agreement constitutes a horizontal market allocation, and is therefore a *per se* violation of federal antitrust law. *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972). Such agreements are deemed "horizontal" restraints and presumed illegal "regardless of whether the parties split a market within which both do business or whether they merely reserve one market for one and another for the other." *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990) (*per curiam*).

23. Notwithstanding that the County itself has rejected the City's contention that the Market Allocation Agreement has a perpetual term, the City still contends that the Market Allocation Agreement is binding.

---

[2] The full title of the document is "Agreement Between Indian River County and the City of Vero Beach Setting Service Areas for Water and Sewer Service; Memorializing Certain Water and Sewer Allocations; and Repealing Prior Agreements", and it is dated August 18, 1989.

24. The City's assertion that the Market Allocation Agreement survives in perpetuity makes particularly clear that it constitutes an unreasonable and unlawful restraint on trade, which deprives the Town and its residents from obtaining the benefits of competitive service offerings forevermore.

25. The Market Allocation Agreement, and particularly the City's assertions regarding its indefinite term more than 30 years after it was initially entered, is not and cannot be ancillary to any procompetitive purpose, nor is it necessary to serve the public interest.

26. The City Defendants are not authorized by any law to engage in this anticompetitive conduct against the Town and its residents.

27. In fact, Florida law provides that the City's "corporate powers shall not extend or apply within the corporate limits of another municipality." § 180.02(3), Fla. Stat.; *see also City of Indian Harbour Beach v. City of Melbourne*, 265 So. 2d 422, 424 (Fla. 4th DCA 1972) ("we have two municipalities, theoretically equally independent.... we know of no law that would make Indian Harbour Beach permit the intrusion and maintenance of another municipality's utility lines and services contrary to its municipal will when its rates and services were not acceptable to Indian Harbour Beach.").

28. Moreover, the state has established no policy, including no policy implemented through the Florida Public Service Commission or any other state regulatory agency, endorsing the City's claim of monopoly service territory rights within the corporate limits of the Town.[3]

---

[3] Unlike territorial agreements related to electric utilities, the Florida Public Service Commission has no jurisdiction over approving territorial agreements related to water utilities. The Florida Public Service Commission, however, has warned a *municipal* utility that unless its electric service territory agreement with another utility was approved and actively supervised by the Public Service Commission then it would be considered a horizontal market allocation placing the municipal utility "in jeopardy of antitrust liability." *See In re: Complaint of Robert D. Reynolds and Julianne C. Reynolds against Utility Board of the City of Key West, Florida d/b/a Keys Energy Services regarding extending commercial electrical transmission lines to each property owner of No Name Key, Florida,* Order No. PSC-13-0207-PAA-EM, at 52-54 (Fla. Pub. Serv. Comm'n May 21, 2013).

29. The City's monopolistic abuse of the Town and its residents reduces competition for the Essential Water Services, which in turn will lead to higher prices and lower quality services, the harms that the antitrust laws are designed to protect consumers against.

30. On information and belief, the City needs a predictable flow of revenues from supra-competitive pricing in order to secure financing for development of its facilities, which will be funded in part from customers in the Town who are not residents of the City.

31. Indeed, the Town and its residents have had no voice in electing or replacing the City officials who made, approved and/or ratified utility management decisions that have led to the assertion of monopoly powers against the Town and its residents.

32. In the meantime, the Town is being harmed by its inability to make an effective long-term plan for its citizens regarding the need for Essential Water Services. Given the Town's needs for planning and preparation for a transition to the County's Essential Water Services, the City's assertion that the Town cannot obtain such services from the County is harmful and contrary to the public interest.

33. The City's unlawful position is thus harming the Town's ability to exercise its powers and fulfill its duties under its Charter to address the needs of its residents for Essential Water Services.

34. The City's attempt to deprive the Town from being able to receive competitive Essential Water Services from the County, in perpetuity, has left the Town in doubt as to its legal rights and in need of declaratory relief.

35. The Town has a present and immediate need to be able to move forward with efforts to obtain Essential Water Services with the County at the conclusion of the Town's Franchise Agreement with the City.

36. The City Defendants should be permanently enjoined from monopolistic and anticompetitive acts against the Town in violation of federal antitrust law.

37. Although the Local Government Antitrust Act of 1984, 15 U.S.C. § 34, *et seq.*, provides some protections to local governments for antitrust violations, such as precluding claims for damages and attorneys' fees in actions for damages against local governments, it does not bar claims for injunctive relief and related attorneys' fees. *See, e.g., Pine Ridge Recycling, Inc. v. Butts Cty., Ga.*, 855 F. Supp. 1264, 1272 (M.D. Ga. 1994).

38. The Town has retained the undersigned firm to represent it in this action.

## Count I

### Declaratory and Injunctive Relief

39. The Town adopts paragraphs 1 through 38 as if set forth fully herein.

40. There is an ongoing dispute between the parties and the Town is in doubt as to its rights. In particular, there is a bona fide, actual, present and practical controversy between the parties regarding the effect of the Market Allocation Agreement.

41. Based on the foregoing, the Town seeks a declaratory judgment that the Market Allocation Agreement, upon which the City relies to deprive the Town and its residents the right to competitive Essential Water Services, should be declared unlawful and void for any purpose pursuant to federal antitrust law.

42. Furthermore, the Court should permanently enjoin the City Defendants from asserting any rights to an alleged territorial allocation based on the Market Allocation Agreement, or engaging in any other anticompetitive conduct, that would prevent the Town and its residents from obtaining Essential Water Services from the County or otherwise.

WHEREFORE, the Town respectfully requests that this Court enter an Order providing the following relief:

A. Determine that pursuant to federal antitrust law the Market Allocation Agreement, upon which the City relies to deprive the Town and its residents the right to a competitive marketplace for Essential Water Services, is unlawful and void for any purpose;

B. Permanently enjoin the City Defendants from asserting any rights to an alleged territorial allocation based on the Market Allocation Agreement, or engaging in any other anticompetitive conduct, that would prevent the Town from obtaining Essential Water Services from the County or otherwise;

C. Grant the Town such other and supplemental relief as the Court deems proper under the circumstances, including any additional injunctive relief which may be required; and

D. Award the Town its attorneys' fees and costs.

Respectfully submitted this 26th day of August, 2021.

                    **HOLLAND & KNIGHT LLP**

                    */s/ Kevin Cox*
                    **KEVIN COX**
                    Florida Bar No. 34020
                    Email: kevin.cox@hklaw.com
                    **D. BRUCE MAY, JR.**
                    Florida Bar No. 354473
                    Email: bruce.may@hklaw.com
                    **HOLLAND & KNIGHT LLP**
                    315 S. Calhoun Street, Suite 600
                    Tallahassee, Florida 32301
                    Telephone: (850) 224-7000
                    Facsimile: (850) 224-8832

                    ***Attorneys for Plaintiff Town of Indian River Shores***