UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 21-14354-CIV-CANNON/McCabe

**TOWN OF INDIAN RIVER SHORES**,

    Plaintiff,

v.

**CITY OF VERO BEACH**,

    Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss (the "Motion") [ECF No. 19]. The Court has reviewed the Complaint [ECF No. 1], the Motion [ECF No. 19], Plaintiff's Response in Opposition [ECF No. 25], Defendant's Reply [ECF No. 27], Indian River County's Statement of No Interest [ECF No. 35], and the full record. The Court also held a hearing on the Motion [ECF Nos. 34, 36]. For the reasons set forth below, Defendant's Motion to Dismiss [ECF No. 19] is **DENIED**.

### FACTUAL BACKGROUND

In this antitrust action, the Town of Indian River Shores (the "Town") is suing the City of Vero Beach (the "City") seeking declaratory and injunctive relief based on alleged anticompetitive harm arising from a 1989 service territory agreement between the City and Indian River County (the "County") [ECF No. 1 p. 2]. The Town alleges that the 1989 Service Territory Agreement (the "1989 Agreement") [ECF No. 1-3 pp. 3–10] forecloses it from obtaining water, wastewater, and reuse water services ("Essential Water Services") from the County in the future [ECF No. 1 p. 2; ECF No. 1 ¶¶ 18, 21].

Currently, the Town has agreed with the City, pursuant to the 2012 Water, Wastewater, and Reuse Water Franchise Agreement (the "2012 Franchise Agreement") [ECF No. 1-2], to have the City provide the Town's residents with Essential Water Services for a limited period of time [ECF No. 1 ¶ 12]. The 2012 Franchise Agreement contemplates possible termination or renegotiation so long as the Town gives notice within four years prior to the fifteenth anniversary date: "Indian River Shores, should it desire to renegotiate or terminate, shall give Four (4) years notice before the fifteenth (15th) anniversary date, otherwise the Franchise will continue uninterrupted under the terms and conditions of this Agreement" [ECF No. 1-2 § 4]. In other words, if the Town wants to terminate the 2012 Franchise Agreement before the end of the agreement's thirty-year term, it must give notice by October 1, 2023—four years prior to the Fifteenth Anniversary of the Franchise, which is October 1, 2027 [ECF No. 1 ¶ 13; *see* ECF No. 1-2 p. 1].

As alleged in the Complaint, the Town believes that it could get higher quality services at a lower cost from the County rather than from the City [ECF No. 1 ¶ 14]. However, the City has asserted in a letter, dated March 24, 2021, that the 1989 Agreement prevents the County from providing services to the Town without the City's written approval [ECF No. 1 ¶¶ 18–20; *see* ECF No. 1-3 p. 2 (March 24, 2021, letter)]. According to the Complaint, the City is asserting that the 1989 Agreement survives in perpetuity and therefore permanently deprives the Town of competitive service offerings [ECF No. 1 ¶ 24].

Based on this factual backdrop, the Town alleges that the 1989 Agreement between the City and the County constitutes a "horizontal market allocation" and thus a *per se* violation of the Sherman Act, 15 U.S.C. § 1, citing *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972) [ECF No. 1 ¶ 22]. The Town's Complaint asserts a single claim seeking declaratory and injunctive

relief ("Count I") [ECF No. 1 ¶¶ 39–42]. Specifically, the Town seeks a judgment declaring the 1989 Agreement unlawful and void under the Sherman Act, 15 U.S.C. § 1 [ECF No. 1 ¶ 41]. The Town also seeks to permanently enjoin the City "from asserting any rights to an alleged territorial allocation based on the Market Allocation Agreement [the 1989 Agreement], or engaging in any other anticompetitive conduct, that would prevent the Town and its residents from obtaining Essential Water Services from the County or otherwise" [ECF No. 1 ¶ 42].

The City now moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7) [ECF No. 19 p. 1]. The City's Motion is ripe for adjudication [ECF No. 25 (Response); ECF No. 27 (Reply)].

## LEGAL STANDARDS

### A. Dismissal for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). A facial attack on the complaint requires the court merely look to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, taking as true the allegations in the plaintiff's complaint. *Id.* "By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008).

"Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Dig. Props, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). An attack on the ripeness of a claim is a form of factual attack on subject matter jurisdiction. *See Emery v. Allied Pilots Ass'n*, No.

16-80243-CIV, 2017 WL 1047029, at *1 (S.D. Fla. Mar. 20, 2017). "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002). If a court determines that it lacks subject matter jurisdiction, the court must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

### B. Dismissal for Failure to State a Claim Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal under Rule 12(b)(6), a complaint must allege facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). A claim for relief is plausible if the complaint contains factual allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 545). Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

### C. Dismissal for Failure to Join a Party Under Rule 12(b)(7)

Pursuant to Federal Rule of Civil Procedure 12(b)(7), an action may be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Rule 19 sets forth a two-part test to determine whether a party is indispensable. *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003). First, the court must examine, using the standards of Rule 19(a), whether the person in question is "required." Fed. R. Civ. P. 19(a)(1). If a court

determines that an absent party does satisfy the Rule 19(a) criteria, i.e., that the party is a required party, "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). If the party is "required" under Rule 19(a) but joinder is not feasible because, for example, doing so would divest the court of jurisdiction, then the court must inquire whether, applying the factors in Rule 19(b), the litigation should continue among the existing parties or should be dismissed. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1347 (11th Cir. 2011).

## DISCUSSION

The City argues that the Town's claim for declaratory and injunctive relief should be dismissed on three separate grounds. First, the City argues that the case is not ripe and thus should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) [ECF No. 19 pp. 13–15]. As determined below, this argument fails; Plaintiff's claim sounds in antitrust law rather than in breach of contract and presents an actual controversy over whether the 1989 Agreement is a horizontal market allocation. Second, the City argues that the 1989 Agreement is not an anticompetitive restraint on trade and that, even if it were, the state action immunity doctrine shields the City from federal antitrust liability [ECF No. 19 pp. 7–11]. For the reasons that follow, the Court disagrees; the 1989 Agreement plausibly constitutes an anticompetitive restraint on trade, and the state action immunity doctrine does not apply. Third, the City argues that dismissal is warranted under Rule 12(b)(7) because Plaintiff failed to join the County, which the City contends is a necessary party to this action under Rule 19 [ECF No. 19 pp. 12–13]. The County since has filed a Statement of No Interest in which it "takes no position" with respect to any of the arguments raised by either party and disclaims any interest "in being a party in this litigation" [ECF No. 35 p. 1]. Upon consideration of the full record, including the described Statement of No

Interest, the Court determines at this juncture that the County is not a required party under Rule 19(a)(1). The Court offers a full analysis of these arguments in turn.

## I. Ripeness

The City contends that the case is not ripe for adjudication under both Article III and the Declaratory Judgment Act, 28 U.S.C. § 2201, because Plaintiff's claim "alleges a hypothetical situation" that, at some point in the future, the City could withhold its approval for the County to provide water services to the Town [ECF No. 19 pp. 13–15]. This situation, according to the City, "may or may not occur" [ECF No. 19 p. 15]. In other words, because the City has not yet exercised any "veto right" under the 1989 Agreement, the Town has not been harmed, and a substantial controversy does not yet exist [ECF No. 27 pp. 6–7]. The Town disagrees, arguing in response that the harm it alleges—its effective inability to negotiate with the County to consummate an essential services supply contract—already has occurred and is continuing because "the Town and County's immediate future conduct turns on whether the City legally has this veto right" [ECF No. 25 pp. 17–20].

Article III of the Constitution limits federal courts to adjudicating actual "cases" and "controversies." *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Echoing the "case or controversy" requirement of Article III, the federal Declaratory Judgment Act "provides that a declaratory judgment may only be issued in the case of an actual controversy." *See Emory v. Peeler*, 756 F.2d 1547, 1551–52 (11th Cir. 1985) (citing 28 U.S.C. § 2201). "That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Emory*, 756 F.2d at 1552.

In deciding whether a claim is ripe for adjudication or review, the Court "look[s] primarily at two considerations: 1) the fitness of the issues for judicial decision, and 2) the hardship to the parties of withholding court consideration." *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, Fla.*, 727 F.3d 1349, 1356 (11th Cir. 2013). As to the fitness prong, the Court asks whether the parties raise an issue that can be decided "without further factual development" and also "whether the institutional interests of the court and agency favor immediate review." *Club Madonna, Inc. v. City of Mia. Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019) (first citing *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1258 (11th Cir. 2010); and then citing *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)). "If a claim is fit for judicial decision, that is end of the inquiry, and the matter is ripe, given that the absence of a 'hardship' 'cannot tip the balance against judicial review' under those circumstances." *Club Madonna, Inc.*, 924 F.3d at 1380 (quoting *Harrell*, 608 F.3d at 1259). But if the hardship prong merits evaluation, the focus there is on the "costs to the complaining party of delaying review until conditions for deciding the controversy are ideal." *Harrel*, 608 F.3d at 1258.

Applying these factors, the Court finds that a ripe controversy exists in this case. Although the City contends that this issue is hypothetical because the City has not yet withheld approval under the 1989 Agreement, the Court disagrees. The Town's allegations, which sound in antitrust rather than in breach of contract, present a concrete and current dispute that does not depend on what the City eventually may elect to do in the future vis-à-vis the 1989 Agreement. Specifically, as alleged, the City's ongoing "monopolistic abuse of the Town and its residents reduces competition for the Essential Water Services, which in turn will lead to higher prices and lower quality services, the harms that the antitrust laws are designed to protect consumers against" [ECF No. 1 ¶ 29]. The Town further alleges that, at present, "the Town is being harmed by its

inability to make an effective long-term plan for its citizens regarding the need for Essential Water Services," and that "[t]he City's unlawful position is thus harming the Town's ability to exercise its powers and fulfill its duties under its Charter to address the needs of its residents for Essential Water Services" [ECF No. 1 ¶¶ 32–33]. In other words, the Town is alleging that the very existence of a veto right implicates antitrust liability as an anticompetitive trade restraint, regardless of whether the City chooses to exercise it in the future [ECF No. 25 pp. 19–20 ("The Town and County's immediate future conduct turns on whether the City legally has this veto right.")].

In the Court's view, Plaintiff's allegations are sufficient to show a present controversy that is both actual and not hypothetical, irrespective of whether the City ultimately decides to tangibly withhold its approval for a services contract between the Town and the County. Moreover, although the City argues that the parties' positions with respect to the 1989 Agreement are not sufficiently adverse because the City has not yet withheld its approval,[1] this argument minimizes the reality of the parties' positions. The City itself affirmatively raised the issue by sending the March 24, 2021, letter to the County, and that letter explicitly relied on the terms of the 1989 Agreement, including the subject approval provision [ECF No. 1-3 ("Paragraph 3 of the Agreement states, 'the County shall not provide water or sewer service within the Service Area without the written approval of the City.'")]. What is more, the parties already have exhausted extensive dispute resolution procedures pursuant to Chapter 164 of the Florida Statutes—including a conflict assessment meeting conducted on October 14, 2021, a joint public meeting conducted on November 19, 2021, and a mediation conducted on January 20, 2022—all of which keenly

---

[1] At the hearing, the City declined to comment on whether it would grant approval for the County to provide water services to the Town, stating: "I cannot tell you today what the City's position would be because we have not been asked" [ECF No. 36 p. 12:14–16].

demonstrate the parties' enduring disagreement [ECF No. 28 p. 1]. Against this backdrop, the Court finds the parties' legal interests are sufficiently adverse to establish a substantial, ripe controversy that is fit for judicial decision.

Although the Court's ripeness analysis could end there,[2] the Court also finds that the Town has made a sufficient showing that withholding court consideration pending further action by the City will cause hardship. The deadline for the Town to provide notice to the City to renegotiate or terminate the 2012 Franchise Agreement is October 1, 2023 [ECF No. 1 ¶ 13; *see* ECF No. 36 pp. 21–23]. In anticipation of that deadline, the Town alleges that it needs to prepare for a transition to the County's Water Services, alleging further that simply terminating its agreement with the City without first solidifying an alternative could be "harmful and contrary to the public interest" [ECF No. 1 ¶ 33]. On these allegations, the Court is satisfied that putting this case on hold pending some future action by the City could cause hardship to the Town by forcing it to choose either between continuing to receive its Essential Water Services from the City or potentially leaving its residents without service.

For these reasons, the case presents a substantial, ripe controversy that it is justiciable under Article III and the Declaratory Judgment Act.

## II. Merits

Turning to the merits of Plaintiff's claim, the Town asserts that the 1989 Agreement violates the Sherman Act, 15 U.S.C. § 1, because it is a "horizontal market allocation" under the holding of *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972). The 1989 Agreement between the City and Indian River County provides that the City will be responsible for providing

---

[2] "If a claim is fit for judicial decision, that is end of the inquiry, and the matter is ripe, given that the absence of a hardship cannot tip the balance against judicial review under those circumstances." *Club Madonna, Inc.*, 924 F.3d at 1380.

Essential Water Services to a designated service area (which includes the Town) [*see* ECF No. 1-3]. As relevant here, the 1989 Agreement provides that "[t]he County shall not provide water or sewer service within the City service area approval of the City" [ECF No. 1-3 ¶ 3]. This provision, the Town alleges, particularly as asserted in the City's March 24, 2021 Letter [ECF No. 1-3 p. 2], "constitutes an unreasonable and unlawful restraint on trade, which deprives the Town and its residents from obtaining the benefits of competitive service offerings forevermore" [ECF No. 1 ¶ 24].

### A. Horizontal Market Allocation

The Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. In *Topco*, the Supreme Court held that horizontal market allocations are *per se* violations of the Sherman Act, stating as follows:

> One of the classic examples of a *per se* violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition. Such concerted action is usually termed a 'horizontal' restraint, in contradistinction to combinations of persons at different levels of the market structure, e.g., manufacturers and distributors, which are termed 'vertical' restraints. This Court has reiterated time and time again that '(h)orizontal territorial limitations . . . are naked restraints of trade with no purpose except stifling of competition.'

*Topco Assocs., Inc.*, 405 U.S. at 608. "Such limitations are *per se* violations of the Sherman Act." *Id.* Moreover, horizontal market agreements "are anticompetitive regardless of whether the parties split a market within which both do business or whether they merely reserve one market for one and another for the other." *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49–50 (1990).

The City does not meaningfully dispute that the 1989 Agreement constitutes a horizontal restraint on trade as alleged by the Town [ECF No. 19 p. 7]. Instead, the City focuses on its principal alternative argument—that any such monopolistic restraint on trade is permissible by

10

virtue of the state action immunity doctrine to federal antitrust law [ECF No. 19 pp. 7–11]. In Opposition, the Town says that state action immunity does not apply, because the requisite state statutory authorization does not extend beyond the boundaries of other incorporated and co-equal municipalities [ECF No. 25 pp. 3–13]. And then in Reply, the City for the first time attempts to offer a substantive rejoinder to the notion of a horizonal trade restraint, arguing that the 1989 Agreement is not a *per se* violation, because it does not include "price fixing," and that, to the extent the delineation of service territories is a horizontal market allocation, such market allocation was included by necessity [ECF No. 27 pp. 3–4].

Taking these arguments together, the Court finds that the Town plausibly has alleged the existence of a horizontal market allocation in violation of the Sherman Act, 15 U.S.C. § 1. The Town has alleged that the 1989 Agreement provides as follows: "the County shall not provide water or sewer service within the City Service Area without the written approval of the City" [ECF No. 1 ¶ 19; ECF No. 1-3 p. 4]. The Town further alleges that the City construes the 1989 Agreement as creating a "permanent territorial allocation" for water services that "forecloses the City's existing customers including the Town from ever obtaining competing Essential Water Services from the County without the City's consent" [ECF No. 1 ¶ 21]. These allegations are plausible and further factually supported by the City's March 24, 2021, letter to the County asserting the City's rights under the 1989 Agreement [ECF No. 1-3 p. 2]. Accordingly, the Court finds the Town's complaint plausibly alleges that the 1989 Agreement constitutes a "horizontal market allocation" and thus is a *per se* antitrust violation under the holding of *Topco*.

Having found that the 1989 Agreement plausibly constitutes a *per se* antitrust violation, the Court now turns to the City's state action immunity doctrine argument.

### B. State Action Immunity Doctrine

"The doctrine of state-action immunity insulates states from suit under the federal antitrust laws." *Diverse Power, Inc. v. City of LaGrange, Ga.*, 934 F.3d 1270, 1273 (11th Cir. 2019). "In *Parker v. Brown*, 317 U.S. 341 (1943), the Supreme Court held that the Sherman Act does not apply to the anticompetitive conduct of states acting as sovereigns." *Askew v. DCH Reg'l Health Care Auth.*, 995 F.2d 1033, 1037 (11th Cir. 1993). But because municipalities "are not themselves sovereign[,] they do not receive all the federal deference of the States that create them." *City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 412 (1978). For local governments to be immune based on state authorization, they must satisfy the "clear articulation requirement"—i.e., they must point to a specific state statute that plainly shows that the legislature contemplated that anticompetitive behavior would result from the authority. *See Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40 (1985). In other words, "state-action immunity applies when a municipality's anticompetitive conduct is the 'foreseeable result' of state legislation." *Diverse Power, Inc.*, 934 F.3d at 1273 (quoting *Town of Hallie*, 471 U.S. at 42). Moreover, the Supreme Court has clarified that such a result is foreseeable "where the displacement of competition was the inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature." *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 229 (2013).

In support of its argument that the "clear articulation requirement" is satisfied for purposes of state action immunity, the City points to several separate sources of statutory authority for the 1989 Agreement, focusing on Fla. Stat. §§ 180.02, 180.03, 180.06 ("Chapter 180") [*see* ECF No. 19 p. 10]. Chapter 180 grants Florida municipalities the authorization to establish public utilities for water services, stating in pertinent part as follows:

> Any municipality or private company organized for the purposes contained in this chapter, is authorized: (1) To clean and improve street channels or other bodies of water for sanitary purposes; (2) To provide means for the regulation of the flow of streams for sanitary purposes; (3) To provide water and alternative water supplies, including, but not limited to, reclaimed water, and water from aquifer storage and recovery and desalination systems for domestic, municipal or industrial uses; (4) To provide for the collection and disposal of sewage, including wastewater reuse, and other liquid wastes.

Fla. Stat. § 180.06. The City also points to two Eleventh Circuit cases, *Auton v. Dade City, Fla.*, 783 F.2d 1009 (11th Cir. 1986), and *Falls Chase Spec. Taxing Dist. v. City of Tallahassee*, 788 F.2d 711 (11th Cir. 1986), for the proposition that Chapter 180 of Florida Statutes meets the "clear articulation requirement" by authorizing municipalities to establish municipal public works. *See Auton*, 783 F.2d at 1011 ("The cumulative effect of [Chapter 180] is to grant Florida municipalities broad power to provide water to their inhabitants. . . . [I]t is clear that anticompetitive effects logically would result from this broad authority to regulate."); *Falls Chase Spec. Taxing Dist.*, 788 F.2d at 714 ("We similarly hold that these statutory provisions evidence a clearly expressed state policy favoring the City's actions in our case." (citing *Auton*, 783 F.2d at 1011)).

The Town disputes that Chapter 180 satisfies the clear articulation requirement. According to the Town, although Chapter 180 authorizes public utilities related to water services, the very same law also restricts a municipality from, as here, extending this power within the boundaries *of another municipality* without its consent [ECF No. 25 p. 5 ("[A municipality's] corporate powers shall not extend or apply within the corporate limits of another municipality." (quoting Fla. Stat. § 180.02))]. The Town further observes that the *Falls Chase* and *Auton* decisions explicitly recognize this limitation, stating that "[t]o engage in one of the authorized public works, a municipality may exercise its corporate powers within its corporate limits and extend outside its corporate limits up to another municipality's boundary." *Falls Chase*, 788 F.2d at 713 (quoting *Auton*, 783 F.2d at 1011).

13

In Reply, the City does not dispute that a municipality cannot assert extraterritorial power in the boundaries of another co-equal municipality without its consent, arguing instead that any such concern is immaterial here because the Town *did* consent by entering into the 2012 Franchise Agreement with the City [ECF No. 27 p. 5]. The City also notes that the Town has been receiving water services from the City for over thirty years without any concern [ECF No. 27 p. 5]. The City thus argues that the Town should be prevented, under the doctrine of estoppel by silence, from objecting to that arrangement now because it reaped the benefit of those services for years without any complaint [ECF No. 27 pp. 5–6].

Upon review, the Court agrees with the Town that state action immunity does not insulate the City from potential federal antitrust liability arising out of the 1989 Agreement as alleged in the Town's well-pleaded complaint. As noted above, the Town's Complaint plausibly alleges a *per se* antitrust violation by alleging that the 1989 Agreement forecloses the Town from obtaining Essential Water Services from the County without the City's consent. The narrow question then is whether such alleged anticompetitive conduct was an inherent, logical, or ordinary result—and thus a foreseeable result—of state law authorizing municipalities to establish public utilities for water services under Chapter 180. The answer to that question is no; Florida law authorizes municipalities to develop public utilities for water services, but that same source of law also limits a municipality from encroaching upon the boundaries of another municipality in the development of such services. Yet that is what is happening here. Chapter 180 "grant[s] Florida municipalities broad power to provide water to their inhabitants" such that "anticompetitive effects logically would result from this broad authority to regulate." *Falls Chase*, 788 F.2d at 714 (quoting *Auton*, 783 F.2d at 1011). But Chapter 180's authorization, and therefore its clearly articulated policy to displace competition, extends only "up to another municipality's boundary." *Falls Chase*, 788

14

F.2d at 713 (quoting *Auton*, 783 F.2d at 1011). In short, it cannot be said that the Florida legislature, by authorizing municipalities to develop public utilities for water services, contemplated the anticompetitive conduct alleged here—a horizontal market allocation between two local government entities, effectively granting one municipality exclusive market control over the services of another incorporated municipality, where the same statute limits the exercise of municipal corporate powers within the corporate limits of another municipality. Accordingly, the City's alleged anticompetitive conduct based on the 1989 Agreement was not clearly authorized by the state of Florida sufficient to pass the "clear articulation requirement" for state action immunity from federal antitrust law.[3]

The Court's conclusion is guided by the Eleventh Circuit's decision in *Diverse Power, Inc. v. City of LaGrange, Ga.*, 934 F.3d 1270 (11th Cir. 2019). In *Diverse Power, Inc.*, the Eleventh Circuit examined an ordinance by a Georgia municipality that used its water services monopoly to gain leverage and increase its energy market share. *Id.* at 1277. The Eleventh Circuit found that such anticompetitive conduct was not the "inherent, logical, or ordinary result of the legislative scheme" at issue—which, like the relevant Florida statutes here, authorized municipalities to operate and maintain water and sewage services. *Id.* In so doing, the Eleventh Circuit noted that "whatever the outer limits of *Phoebe Putney's* 'inherent, logical, or ordinary' gloss, we think it is safe to say that the tying of an unrelated service in a different market to the provision of water service falls outside the statutes' grant of immunity." *Id.* at 1278. Likewise here, the alleged

---

[3] In passing, Defendant cites other sources of state statutory authority relating to the City of Vero Beach's corporate charter [ECF No. 19 p. 10 (citing 1941 Fla. Laws Chapter 21612, section 41; 1943 Fla. Laws 1113; 1951 Fla. Laws 2803)]. Defendant does not explain, however, how the anticompetitive conduct alleged here was a foreseeable result of those provisions. And in any event, those provisions still face Chapter 180's limitation on the exercise of extraterritorial municipal corporate power. *See* Fla. Stat. § 180.02.

anticompetitive conduct at issue—foreclosing the Town's ability to receive water services from the County—extends beyond any inherent, logical, or ordinary result of what the state authorized in Chapter 180. *See* Fla. Stat. § 180.02 ("[A municipality's] corporate powers shall not extend or apply within the corporate limits of another municipality.").

### C. Consent and Course of Dealing

As a last resort, the City says it remains immune from antitrust liability on the theory that the Town "consented" to the City's extraterritorial provision of services by entering into the 2012 Franchise Agreement with the City, and more generally, by receiving water from the City for more than thirty years [ECF No. 27 pp. 4–6 (referencing "estoppel by silence")]. This argument, raised for the first time in the Reply,[4] finds no place in the state action immunity caselaw and misconstrues the nature of the Town's claim. The Town is not seeking to invalidate the 2012 Franchise Agreement or to argue that the City is precluded from providing service to the Town; rather, the Town is seeking to invalidate the 1989 Agreement between the City and the County to ensure a competitive market for services. That the Town has obtained water from the City for many years without apparent objection might provide context for the parties' relationship and current dispute. But the City has made no showing that such history precludes the Town from seeking legal redress now for what it has plausibly alleged is anticompetitive conduct in violation of federal antitrust law.

In sum, taking Plaintiff's allegations as true, Plaintiff has adequately alleged that the 1989 Agreement qualifies as a *per se* antitrust violation. Further, because the alleged anticompetitive conduct at issue does not meet the "clear articulation requirement," the state action

---

[4] *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005).

immunity doctrine does not apply, Defendant's counterarguments fail, and dismissal on this basis is not warranted.

### III. Required Parties under Rule 19

Finally, the City argues that the County is a required party under Rule 19, requiring dismissal of the case for failure to join the County [ECF No. 19 pp. 13–15].

Rule 19 governs the joinder of required persons to an action and outlines a "two-part test." *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003). Under that test, the Court first determines whether the nonparties are "required" persons. Fed. R. Civ. P. 19(a)(1); *see Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1039 (11th Cir. 2014). A person is required where:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If joinder of a required person is not feasible—if, for instance, the person's joinder destroys the parties' diversity, the person is not subject to personal jurisdiction, or the person objects to venue—the Court must determine "whether the Rule 19(b) factors permit the litigation to continue if the party cannot be joined, or instead whether they are indispensable" and the case must be dismissed. *Winn-Dixie Stores, Inc.*, 746 F.3d at 1039.

The Town argues that the County need not be joined because it is not a required party under Rule 19(a) [ECF No. 25 pp. 14–16]. This is so, the Town argues, because antitrust co-conspirators

are not typically deemed to be required and also because the County has not affirmatively claimed an interest in the case [ECF No. 25 pp. 14–16]. The County subsequently filed a Statement of No Interest, which acknowledges that it is a party to the 1989 Agreement but states that it "has no interest in being a party in this litigation and sees this matter as a dispute between the Town and the City" [ECF No. 35]. The City did not seek to contest or otherwise respond to the County's statement, arguing more generally that the County is a required party because the Town's claim seeks to invalidate an agreement to which the County is a party [ECF No. 27 p. 2].

Upon review of the parties' arguments and the County's Statement of No Interest, the Court is satisfied that the County is not a required party within the meaning of Rule 19. While it is true that the County is a party to the 1989 Agreement, the County has specifically disclaimed any interest in the litigation [ECF No. 35]. Moreover, neither party has identified any other reason, practical or otherwise, that would require the presence of the County in this litigation. The Court therefore determines that, barring some further showing or material change in circumstances, the County is not so situated that its absence in this case either would impair the County's interest as a practical matter or subject the City to any substantial risk of inconsistent obligations. *See* Fed. R. Civ. P. 19(a)(1)(B). Neither dismissal nor joinder is warranted under Rule 19.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [ECF No. 19] is **DENIED**.
2. Defendant shall file its answer to the Complaint [ECF No. 1], on or before **September 9, 2022**.

CASE NO. 21-14354-CIV-CANNON/McCabe

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 23rd day of August 2022.

                                                                                       _____
                                                                                       **AILEEN M. CANNON**
                                                                                       **UNITED STATES DISTRICT JUDGE**

cc:     counsel of record